UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

\* \* \*

TIMOTHY DEMOND BARRY,

    Plaintiff,

v.

T. FELKER, et al.,

    Defendants.

2:08-CV-01722-PMP-GWF

**ORDER**

Before the Court is Defendants Jason Bishop and Nickolus Albonico's Motion for Summary Judgment (Doc. #63), filed on March 1, 2013. Plaintiff Timothy Demond Barry filed an Opposition (Doc. #70) with supporting Declarations (Doc. #71, #72) on May 15, 2013. Defendants filed a Reply (Doc. #73) on May 24, 2013.

**I. BACKGROUND**

During the time relevant to the events at issue in this case, Plaintiff Timothy Demond Barry ("Barry") was an inmate housed at the California Department of Corrections and Rehabilitation, High Desert State Prison ("HDSP"). (Defs.' Mot. Summ. J. (Doc. #63) ["MSJ"], Decl. of Nickolus Albonico in Support of Defs.' Mot. Summ. J. ["Albonico Decl."] at 2; Decl. of Timothy Demond Barry in Support of Opp'n to Defs.' Mot. Summ. J. (Doc. #71) ["Barry Decl."] at 1.) Defendants Nickolus Albonico ("Albonico") and Jason Bishop ("Bishop") are correctional lieutenants at HDSP. (Albonico Decl. at 1; MSJ, Decl. of Jason Bishop in Support of Defs.' Mot. Summ. J. ["Bishop Decl."] at 1.)

1    On July 23, 2007, correctional officers at HDSP saw two inmates chasing another
2 inmate across the yard at Facility C. (Albonico Decl. at 1.) One of the pursuer inmates
3 stabbed the victim inmate, who continued to run across the yard. (Id.) The victim ran to the
4 other side of the yard, fell to the ground, and died from multiple stab wounds. (Id.)
5 Correctional officers ordered the assailants to the ground, and one of the assailants fell near
6 a group of inmates not involved in the attack. (Id.) Correctional officers recovered one
7 weapon from one of the assailants. (Id. at 1-2.) However, because the victim had multiple
8 stab wounds and was being chased by two inmates, correctional officers were concerned
9 another weapon was used in the assault that had not been recovered. (Id.) Defendant
10 Albonico therefore ordered a systematic search of every inmate in the yard to locate any
11 weapons. (Id. at 2.) There were over 100 inmates in the yard at the time. (Id.)
12 Correctional officers subjected each inmate to a strip search, except for three inmates who
13 refused to submit to a strip search in the yard. (Id.) Plaintiff Barry was among those who
14 refused to be strip searched in the yard. (Id.; Barry Decl. at 1.)

15    Albonico again ordered the three inmates to submit to strip searches in the yard but
16 they refused. (Albonico Decl. at 2; MSJ, Decl. of Lakeysia Beene in Support of Defs.' Mot.
17 Summ. J., Ex. A, Dep. of Timothy Barry ["Barry Dep."] at 9.) Albonico ordered
18 correctional officers to place Barry and the other two inmates who refused to be strip
19 searched into handcuffs, escort the inmates to the concrete yard wall of Building C-5, place
20 them on their knees, and supervise these inmates while the other inmates were searched and
21 the yard secured. (Albonico Decl. at 2.) According to Albonico, when inmates refuse to
22 submit to strip searches they sometimes are placed in the prison's program holding cells,
23 but at the time Barry refused to submit to a search, the program holding cells were
24 occupied. (Id.) According to Barry, one inmate, Melvin Foster, was escorted to medical
25 rather than forced to his knees on the concrete. (MSJ, Barry Dep. at 12.)
26 ///

Albonico states he chose the location to which the three inmates were escorted for tactical reasons, as it provided "optimum gun coverage and a clear path for staff to respond." (Albonico Decl. at 2.) Albonico states he ordered the inmates to their knees because a "standing inmate imposes [sic] a threat because he can move quickly and attack before officers have sufficient time to respond to prevent the attack." (Id.) Albonico avers that his "decision to direct staff to escort BARRY away from the crime scene and kneel on the ground was based on a tactical decision to restore control of the yard and to ensure the safety of staff and other inmates while a search for a possible second murder weapon was conducted." (Id. at 3.)

Barry avers Albonico and Bishop ordered Barry to kneel on hot concrete and "stood idly by while he cried for help when he was suffering the horrific side effects of being placed on hot concrete getting second degree burns." (Barry Decl. at 1-2.) Another inmate, Earl Fullilove ("Fullilove"), states under oath that he "observed several other unamed [sic] officers and these defendants force inmate Barry to the ground on his knees." (Decl. of Inmate Earl Fullilove T-43038 in Support of Pl.'s Opp'n to Defs.' Mot. Summ. J. (Doc. #72) at 2.) Fullilove further states that while he and other inmates "were complying with officers the plaintiff Barry was still in that position on his knees in the sun on the hot concrete the entire time" until Fullilove and the other inmates were escorted off the yard. (Id.) Albonico denies he heard any of the inmates complain about pain to their knees. (Albonico Decl. at 2.) According to Albonico, the three inmates were on their knees for approximately twenty minutes while the yard was cleared. (Id. at 3.)

After the yard was cleared of the other inmates, Albonico ordered other officers to escort the three inmates to the Facility C Medical Clinic for a strip search. (Id.) Albonico denies he noticed any injury to the inmates. (Id.) Medical staff medically cleared Barry at 2:15 p.m., noting abrasions on Barry's knees. (MSJ, Decl. of Dmitri Hanlon in Support of Defs.' Mot. Summ. J., Medical Report of Injury or Unusual Occurrence.) According to the

Medical Report, the incident occurred at 1:45 p.m., and Barry was seen in the medical office at 2:10 p.m. (Id.)

Defendant Bishop denies he participated in the events in the yard at Facility C on July 23, 2007, as he did not clock into work until 2 p.m. (Bishop Decl. at 1.) According to Bishop, the first he learned of any incident involving Barry was when a nurse informed him at approximately 6:30 p.m. that she had examined Barry, and Barry had complained of burns to his knees. (Bishop Decl. at 1-2.) An Encounter Form indicates a nurse and a physician examined Barry at 5:45 p.m., and concluded he suffered second degree burns to his knees. (Pl.'s Opp'n to Defs.' Mot. Summ. J. (Doc. #170), Ex. C.) According to the Encounter Form, Barry was discharged from medical at 6:15 p.m. (Id.)

Barry brought suit in this Court on July 25, 2008, against Defendants Albonico, Bishop, and T. Felker, the warden at HDSP. (Compl. (Doc. #1).) Barry alleges Defendants violated his Eighth Amendment right against cruel and unusual punishment by forcing him to kneel on the hot concrete despite his complaints that he was being injured, resulting in second degree burns to his knees.

Defendant Felker previously moved to dismiss the Complaint's claims against him, which this Court granted. (Mot. to Dismiss (Doc. #16); Order (Doc. #21).) Although the motion was filed only by Defendant Felker, the Court erroneously granted dismissal as to Defendants Albonico and Bishop as well. (Order (Doc. #21); Order (Doc. #26).) After that error was corrected, Defendants Albonico and Bishop moved for summary judgment. (Defs.' Mot. Summ. J. (Doc. #47).) The Court granted summary judgment, in part because Barry had not filed a substantive response to the summary judgment motion. (Order (Doc. #53).) The United States Court of Appeals reversed, concluding the record did not "indicate that Barry received notice of the requirements to defeat summary judgment." (Mem. (Doc. #59) at 2 (citing Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc); Woods v. Carey, 684 F.3d 934, 935 (9th Cir. 2012)).)

On remand, Defendants Albonico and Bishop again move for summary judgment. Defendants argue they are entitled to summary judgment on Barry's Eighth Amendment claim because there is no evidence Defendants inflicted unnecessary and wanton force. Defendants contend Albonico's orders were reasonable and necessary given the security situation in the yard following the murder of an inmate. Defendants contend Bishop did not order Barry to his knees, as he did not begin work until 2:00 p.m., and thus Bishop did not participate in the incident. Alternatively, Defendants argue they are entitled to qualified immunity because a reasonable official in Defendants' position would not believe it was unconstitutional to make an inmate kneel on the ground while other inmates were searched for a weapon that may have been used in the murder of another inmate.

Barry responds that he has presented evidence, in the form of his own affidavit and that of Fullilove, that Defendants ordered Barry to his knees on hot concrete, they kept him in that position despite his complaints of pain, and he suffered second degree burns as a result. Barry thus argues Defendants were deliberately indifferent to a threat to his health and safety. Barry concedes Bishop did not order Barry to his knees, but contends Bishop stood by and did nothing while Barry was forced to kneel on the hot concrete.

**II. DISCUSSION**

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" if sufficient evidence exists such that a reasonable fact finder could find for the non-moving party. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). Initially, the moving party bears the burden of proving there is no genuine issue of material fact. Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002). After the

moving party meets its burden, the burden shifts to the non-moving party to produce evidence that a genuine issue of material fact remains for trial. Id.  The Court views all evidence in the light most favorable to the non-moving party. Id.

Title 42 U.S.C. § 1983 provides that "[e]very person who, under color of [law], subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . or other proper proceeding for redress." Consequently, to establish liability under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003).

To allay the "risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties," government officials performing discretionary functions may be entitled to qualified immunity for claims made under § 1983. Anderson v. Creighton, 483 U.S. 635, 638 (1987).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).  In ruling on a qualified immunity defense, a court considers whether the facts alleged show the defendant's conduct violated a constitutional right. Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002).  If the plaintiff has shown a deprivation of a constitutional right, the Court must determine whether that right was clearly established. Id.

A right is clearly established if "'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Wilkins v. City of Oakland, 350 F.3d 949, 954 (9th Cir. 2003) (emphasis omitted) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)).  The Court should make this second inquiry "in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201.  An officer will be

entitled to qualified immunity even if he was mistaken in his belief that his conduct was lawful, so long as that belief was reasonable. Wilkins, 350 F.3d at 955. "The plaintiff bears the burden of showing that the right at issue was clearly established . . . ." Sorrels, 290 F.3d at 969. But, a plaintiff need not establish a court previously had declared the defendant's behavior unconstitutional if it would be clear from prior precedent that the conduct was unlawful. Blueford v. Prunty, 108 F.3d 251, 254 (9th Cir. 1997).

Here, Barry alleges Defendants Albonico and Bishop violated his Eighth Amendment rights. The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishment. U.S. Const. amend. VIII. "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319 (1986) (quotation omitted). To establish an Eighth Amendment violation based on a use of force, a plaintiff must show the amount of force used was more than de minimis or otherwise involved force "repugnant to the conscience of mankind." Hudson v. McMillian, 503 U.S. 1, 9-10 (1992) (quotation omitted). Additionally, the plaintiff must show the prison official acted with a culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

When an Eighth Amendment claim is based on an allegation that a prison official used excessive physical force, the culpable state of mind inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," rather than a deliberate indifference standard. Hudson, 503 U.S. at 6-7 (citing Whitley, 475 U.S. at 320-21). "[P]rison administrators are charged with the responsibility of ensuring the safety of the prison staff, administrative personnel, and visitors, as well as . . . the safety of the inmates themselves." Whitley, 475 U.S. at 320 (quotation omitted). Consequently, the deliberate indifference standard "does not adequately capture the importance of such competing obligations, or convey the appropriate hesitancy to critique in hindsight decisions necessarily made in haste, under pressure, and

frequently without the luxury of a second chance." Id.  The Court considers several factors in determining whether force was applied maliciously and sadistically to cause harm, including:

> (1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response.

Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

Viewing the evidence in the light most favorable to Barry as the non-moving party, Barry has failed to present evidence raising a genuine issue of fact that Defendants Albonico and Bishop acted maliciously and sadistically to cause harm, as opposed to a good faith effort to restore discipline.  Barry's injuries were not trivial, as he suffered second degree burns to his knees.  However, the need to apply force was critical.  Two inmates in the yard had just murdered another inmate and officers believed one of the murder weapons might be missing among a crowd of over 100 inmates in the yard.  Such a situation posed an obvious and immediate safety threat to correctional staff and other inmates.

The force used under the circumstances from the perspective of a reasonable officer on the scene was minimal.  The three non-consenting inmates were escorted, without physical abuse, to a location which provided tactical advantages in light of the dangerous situation in the yard.  Handcuffing the inmates and forcing them to their knees also was a minimally forceful means of neutralizing any threat these inmates may pose while officers searched the other inmates in the yard for weapons.  Barry and the other two non-consenting inmates had the option to consent to a search in the yard rather than remain kneeling on the hot concrete, but they refused.  Given the high pressure situation of a potential murder weapon among a group of over 100 inmates, there is no evidence raising a genuine issue of material fact that Defendant Albonico or Bishop ordered Barry to his knees and kept him there despite his complaints for any reason other than a good faith attempt to restore order

1  following a murder and in light of a potential missing murder weapon among a large crowd
2  of inmates.[1]

3  Barry presents no evidence that Albonico's or Bishop's purpose was to punish or to
4  maliciously cause harm.  There is some reference in Barry's deposition attached to
5  Defendants' Motion for Summary Judgment that a correctional officer told Barry he could
6  "get naked" and then be permitted to go back to his cell.  (MSJ, Barry Dep. at 12.)  To the
7  extent this testimony could lead to the inference that Barry was forced to remain on his
8  knees on the hot concrete as punishment for refusing to be strip searched in the yard, there
9  is no evidence Albonico or Bishop made this statement to Barry.  Rather, Barry's Complaint
10 asserts a similar statement was made by "John Doe (1)."  (Compl. at § IV, continuation
11 page.)  Barry identified Albonico and Bishop by name in the Complaint and references
12 "John Doe (1)" as a different individual.  (Id. at §§ III-IV.)  Barry presents no evidence at
13 summary judgment that either Albonico or Bishop made similar comments from which a
14 reasonable jury could conclude Albonico or Bishop acted with the requisite culpable state
15 of mind for an Eighth Amendment violation.  Barry presents no other evidence that either
16 Defendant acted with any purpose other than to restore order in light of the exigent
17 circumstances the correctional officers were confronting.

18 Moreover, even if Barry has presented evidence raising an issue of fact that
19 Defendants violated his Eighth Amendment rights, Defendants would be entitled to
20 qualified immunity.  It would not be clear to an officer in Defendants' position that ordering
21 and keeping Barry on his knees under the circumstances would violate Barry's Eighth
22 Amendment rights.

23 In sum, it is unfortunate that Barry suffered pain and sustained injuries as a result of
24 the July 23, 2007 incident.  However, "[t]he infliction of pain in the course of a prison

---

[1] Defendant Bishop denies he was present and Defendant Albonico denies he heard any complaints of pain, but the Court must view the evidence in the light most favorable to Barry.

security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." Whitley, 475 U.S. at 319. Given the situation Albonico and Bishop confronted, no genuine issue of material fact remains that they did not violate Barry's Eighth Amendment rights. The Court therefore will grant Defendants' summary judgment motion.

## III.  CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants Jason Bishop and Nickolus Albonico's Motion for Summary Judgment (Doc. #63) is hereby GRANTED.

**IT IS FURTHER ORDERED** that Judgment is hereby entered in favor of Defendants Jason Bishop and Nickolus Albonico and against Plaintiff Timothy Demond Barry.

DATED: September 3, 2013

_____
PHILIP M. PRO
United States District Judge